IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOSHUA RUTHERFORD,           :
                             :
    Movant/Defendant,         :
                             :
        v.                   :     Crim. Act. No. 16-61-RGA
                             :     Civ. Act. No. 20-1161-RGA
                             :
UNITED STATES OF AMERICA,    :
                             :
    Respondent/Plaintiff.    :

**MEMORANDUM OPINION**

Joshua Rutherford. *Pro se* Movant.

Graham L. Robinson, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

August 31, 2023
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is Movant Joshua Rutherford's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). (D.I. 77) The Government filed an Answer in Opposition. (D.I. 92) For the reasons that follow, the Court will deny Movant's § 2255 Motion as time-barred by the one-year statute of limitations prescribed in 28 U.S.C. § 2255(f), or alternatively, as meritless.

## I. BACKGROUND

This case stemmed from a Delaware State Police Task Force investigation. (D.I. 44 at 1) On February 15, 2016, an undercover officer for the Delaware State Police ("UC") posted an advertisement in the casual encounters section of an online classifieds website, entitled "family love-no limits – m4m." (*Id.*) The advertisement sought a male "interested in incest." (*Id.*). Movant responded to the advertisement the next day. The UC, posing as the "father," explained to Movant that he was interested in watching Movant have sex with his fictitious 14-year old daughter. (*Id.*) Over the course of the next several weeks, Movant and the UC communicated via text messages. (*Id.* at 2) These sexually explicit conversations led to a planned meeting at Tidbury Park in Dover, Delaware, where Movant was supposed to meet the "father" and his fictitious daughter for a potential sexual encounter. On March 11, 2016, Movant left his job at a high school, where he worked as a teacher and assistant track coach, to drive to the designated meeting location in Dover, Delaware. Delaware State Police Officers arrested Movant upon his arrival to the park. (*Id.*)

Movant was originally charged in the Delaware Superior Court with one count of sexual solicitation of a child in violation of 11 Del. C. § 1112A and one count of attempted possession

of child pornography, in violation of 11 Del. C. § 1111. (D.I. 44 at 2) On June 28, 2016, a District of Delaware grand jury returned a four count Indictment charging Movant with: (1) making a notice seeking child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A); (2) making a notice seeking child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A); (3) attempted inducement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); and (4) attempted inducement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (D.I. 16) On October 20, 2016, Movant's state charges were dismissed. (D.I. 44 at 2)

On June 7, 2017, Movant filed a Motion to Dismiss Indictment and to Compel Discovery of Rationale for Federal Prosecution. (D.I. 42) Judge Sleet denied the Motion on August 28, 2017. (D.I. 44; D.I. 45)

On March 18, 2018, Movant pled guilty to Count Four of the Indictment, which charged him with attempted inducement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). The Plea Agreement contained the following waiver of appellate and collateral rights:

> [Movant] knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. § 2255. Notwithstanding the foregoing, [Movant] reserves his right (1) to file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel; and (2) to appeal his sentence if: (a) the government appeals from the sentence, (b) [Movant's] sentence exceeds the statutory maximum for the offense set forth in the United States Code, or (c) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines.

(D.I. 60 at 3, ¶ 7)

2

Judge Sleet sentenced Movant to the mandatory minimum term of 120 months of imprisonment and entered judgment on June 27, 2018. (D.I. 71) Movant did not file an appeal.

In August 2020, Movant filed the § 2255 Motion presently pending before the Court, which asserts the following two ineffective assistance of counsel Claims: (1) defense counsel refused to file an appeal on Movant's behalf (D.I. 77 at 4) and (2) defense counsel "lied" about everything, "barely ever" met with Movant, and "[r]efused to show [Movant his] discovery and any evidence, but told [Movant] to plead guilty." (*Id.* at 5)

## II.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on the filing of a § 2255 motion by federal prisoners, which begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The one-year limitations period is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (equitable tolling applies in § 2254 proceedings*); Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 n.1 (3d Cir. 1998) (explaining that one-

3

year limitations period set forth in § 2255 is also subject to equitable tolling). A movant may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period); *see also Satterfield v. Dist. Attorney of Phila*, 872 F.3d 152, 162 (3d Cir. 2017) ("*McQuiggin* allows a petitioner who makes a credible claim of actual innocence to pursue his or her constitutional claims even in spite of AEDPA's statute of limitations by utilizing the fundamental-miscarriage-of-justice exception.").

Movant does not allege, and the Court cannot discern, any facts triggering the application of § 2255(f)(2), (3), or (4) for the two Claims asserted in his § 2255 Motion. Given these circumstances, the one-year period of limitations for both Claims in the instant § 2255 Motion began to run when Movant's conviction became final under § 2255(f)(1).

Movant did not appeal his judgment of conviction that was entered on June 27, 2018. Consequently, his conviction became final on July 11, 2018, the date on which the fourteen-day period for filing an appeal expired. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Applying one year to that date, Movant had to file his § 2255 Motion no later than July 11, 2019. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a), (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary date of triggering event for starting limitations period). Movant did not file the instant § 2255 Motion until August 24,

4

2020,[1] more than one year after the expiration of the filing deadline. Thus, the instant § 2255 Motion must be dismissed as time-barred, unless equitable tolling is available or Movant establishes a gateway claim of actual innocence.

### A. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons only if a movant demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 648-49. Equitable tolling is not available where the late filing is due to a movant's excusable neglect. *See Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004); *Miller*, 145 F.3d at 618-19. Consistent with these principles, the Third Circuit has specifically limited equitable tolling of § 2255's limitations period to the following circumstances:

> (1) where the defendant actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999). The movant bears the burden of showing that an extraordinary circumstance stood in his way. *See McAleese v. Brennan*, 483 F.3d 206, 219 (3d Cir. 2007).

Movant provides the following three reasons for his failure to timely file the instant Motion: (1) defense counsel failed to file a direct appeal; (2) he was in "the shu"; and (3) "we are in a global pandemic where [he has] limited resources." (D.I. 77 at 10) None of these excuses

---

[1] Pursuant to the prison mailbox rule, the Court adopts August 24, 2020 as the date of filing, because that is the date of the Motion's certificate of mailing (D.I. 77 at 12). *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (explaining "*pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing.").

triggers equitable tolling. First, § 2255's one-year filing deadline began to run *after* the deadline for filing a direct appeal had expired. Defense counsel's failure to file an appeal did not prevent Movant from filing a timely § 2255 motion. To the extent the argument is based on the idea that he was expecting an appeal to be filed, the argument does not make any sense because Movant expressly waived the right to appeal when he signed the appellate waiver contained in his Plea Agreement.[2] (*See* D.I. 60 at ¶ 7) Second, Movant's placement in the "SHU" ("Secure Housing Unit") does not trigger equitable tolling, because such placement is a "routine aspect of prison life." *Gonzalez v. United States*, 918 F. Supp. 2d 287, 289-90 (D. Del. 2013). Third, any limitation in Movant's resources that may have been caused by COVID-19 cannot justify equitable tolling, because the COVID-19 pandemic had no impact in the United States until, at the earliest, late February 2020. Movant's July 2019 filing deadline had expired at least six months before that.

To the extent Movant's untimely filing was the result of legal ignorance or a miscalculation regarding the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). Thus, the Court concludes that the doctrine of equitable tolling is not available to Movant on the facts he has presented.

### B. Actual Innocence

In extremely rare circumstances, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin*, 569 U.S. at 386. An actual innocence claim must be based on "new reliable

---

[2] Movant does not allege, and the record belies any implicit assertion, that his case falls within one of the exceptions to the appellate waiver.

6

evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence ... that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Movant does not assert his actual innocence. Therefore, the actual innocence equitable exception does not apply in this case.

For all these reasons, the Court concludes that the instant § 2255 Motion is time-barred.

Nevertheless, the statute of limitations is not a jurisdictional bar for habeas cases.[3] On June 11, 2019, Movant filed a letter. (D.I. 73) The letter complained about defense counsel's lack of communication and failure to file a direct appeal. (D.I. 73 at 1) On August 13, 2019, the Clerk's Office responded to Movant's letter, stating, "[I]t is unclear how you wish the [letter] to be treated. If you have not filed a civil complaint and wish to do so, please complete the required forms." (D.I. 74) The Clerk enclosed a form § 2255 application, but Movant did not file any § 2255 form application until he filed the instant Motion in September 2020. Since Movant did not diligently fill out and file the § 2255 form application that was provided in August 2019, it does not trigger equitable tolling. Yet, because the letter contains allegations sufficient to support a request for § 2255 relief, and because Movant filed the letter before the expiration of AEDPA's limitations period, and, as evidenced by the Clerk's letter, a reasonable person might have thought it was an attempt at a request for § 2255 relief, I think it prudent to consider that it might constitute a timely request for such relief. Therefore, the Court will also address Movant's Claims on the merits.

---

[3] *See Holland,* 560 U.S. at 645.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second ("prejudice") prong of the *Strickland* standard, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, *Strickland*'s prejudice prong is satisfied by demonstrating that, but for counsel's error, there is a reasonable probability that the movant would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985).

A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the movant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

### A. Claim One: Defense Counsel Failed to File an Appeal

In Claim One, Movant contends that he "tried to get [defense counsel] to file an appeal that the Judge encouraged [him] to file," but defense counsel "refused to answer phone, emails, and/or anything to help" him. (D.I. 77 at 4-7) Although Movant does not specify the issue he

8

wanted defense counsel to appeal, Movant's letter filed in July 2022 suggests that Movant would have wanted to seek a reduction of his sentence of ten years. (D.I. 94)

"[A] more specific version of the *Strickland* standard applies" when a movant alleges that defense counsel provided ineffective assistance by failing to appeal. *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006). In *Roe v. Flores–Ortega,* 528 U.S. 470, 477 (2000), the United States Supreme Court adopted a two-step analysis to use in failure-to-appeal case when evaluating "deficient performance" under *Strickland*. The first step is to determine if the movant expressly asked counsel to file a notice of appeal. If the movant did expressly ask counsel to file an appeal, and counsel failed to do so, counsel is *per se* ineffective because *Strickland* prejudice is presumed. The *Flores–Ortega* Court explained that a "lawyer who disregards specific instructions from the [movant] to file a notice of appeal acts in a manner that is professionally unreasonable[; movant] is entitled to a new appeal without showing that his appeal would likely have had merit." *Id.* at 477. This presumption of prejudice applies even if the movant signed an appeal waiver.[4] *See Garza v. Idaho*, 139 S.Ct. 739, 749-50 (2019) ("[W]here, as here, an attorney performed deficiently in failing to file a notice of appeal despite the [movant's] express instructions, prejudice is presumed with no further showing from the [movant] of the merits of his underlying claims.")

---

[4] The Government does not mention *Flores-Ortega* or *Garza* when addressing the merits of Claim One. Instead, the Government focuses on the appellate waiver in Movant's Plea Agreement; it contends that defense counsel's failure to file a direct appeal did not constitute ineffective assistance because Movant "voluntarily and expressly waiv[ed] the right to file any appeal, any collateral attack, or any other writ or motion after sentencing." (D.I. 92 at 13-14; *see* D.I. 60 at ¶ 7) According to the Government, Movant cannot demonstrate prejudice because "it is not reasonably probable that [Movant] would have prevailed on an appeal of the sentence because he had waived the right to do so," "and none of the [enumerated] exceptions [in the waiver] applied." (D.I. 92 at 14) The Government also asserts that defense counsel's failure to file a notice of appeal did not constitute deficient performance, because defense counsel was complying with the express terms of the appellate waiver in Movant's Plea Agreement. (*Id.*)

If the movant did not clearly tell counsel whether he wanted an appeal filed, the issue becomes whether counsel consulted with the movant about an appeal. *See Flores-Ortega,* 528 U.S. at 478. In this context, "consult" means "advising the movant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the movant's wishes." *Id.* "If counsel has consulted with the movant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the [movant's] express instructions with respect to an appeal." *Id.* However, if defense counsel failed to consult with the movant about an appeal, courts must "ask a second, and subsidiary, question: whether counsel's failure to consult with the [movant] itself constitutes deficient performance." *Flores-Ortega,* 528 U.S. at 478. Counsel's failure to consult with the movant constitutes deficient performance when "there is reason to think either (1) that a rational [movant] would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular [movant] reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. When undertaking this inquiry, a court must consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the [movant] seeks an end to judicial proceedings." *Id.* However, "[i]n cases when the [movant] pleads guilty, the court must consider such factors as whether the [movant] received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Finally, if a movant shows that defense counsel's failure to consult with him constitutes deficient performance, he must show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Turning to the first step of the *Flores-Ortega* inquiry, Movant does not allege that defense counsel failed to follow explicit instructions to file an appeal. For instance, Movant's § 2255 Motion and letters contain the following statements:

> • "After I got sentenced, I tried to get my lawyer to file an appeal that the Judge encouraged me to file," but defense counsel "refused to answer phone, emails, and/or anything to help" him. (D.I. 77 at 4)
>
> • Defense counsel "did not follow the Judge's recommendation," and "if you review the transcripts you will see what happened and what the Judge recommended." (D.I. 73 at 1)
>
> • Movant is "at a loss on what would be [his] next steps for trying to file for a reduction in sentence," and he "would like to file any and all options for appeal as Judge Sleet encouraged me during my sentencing." (DI. 75 at 1)

Although Movant asserts that he "tried to get" defense counsel to file an appeal, he does not state that he explicitly asked or directed defense counsel to file an appeal. Moreover, contrary to Movant's assertion, while Judge Sleet's displeasure with the existence of mandatory minimum sentences is evident from the sentencing transcript, the sentencing transcript does not contain any statement from Judge Sleet encouraging Movant to appeal his sentence. (D.I. 72 at 8, 33-41) And finally, while defense counsel's sworn affidavit does not explicitly address whether Movant asked him to file an appeal, defense counsel does assert that he "did not simply refuse to file an appeal." (D.I. 86) Based on this record, the Court cannot conclude that defense counsel's failure to file a notice of appeal constituted *per se* ineffective assistance under *Flores-Ortega*.

Turning to the second *Flores-Ortega* step, the Court must consider whether defense counsel consulted with Movant about an appeal and, if not, whether such failure to consult was unreasonable. The Court views Movant's statements that defense counsel did not respond to any of his phone calls, emails, or texts after sentencing as alleging that defense counsel did not

11

consult with Movant about an appeal. And, while defense counsel's affidavit asserts that he explained the appellate waiver to Movant's mother after sentencing (D.I. 86 at 8), the affidavit does not indicate whether he "advis[ed movant] about the advantages and disadvantages of taking an appeal" or that he "ma[de] a reasonable effort to discover [movant's] wishes." *Flores-Ortega*, 528 U.S. at 478. Given these circumstances, the Court will presume that counsel did not "consult" with Movant in the manner contemplated by *Flores–Ortega*.

Nevertheless, the Court concludes that defense counsel did not unreasonably fail to consult with Movant, because Movant's situation parallels the example provided by the *Flores–Ortega* Court as to when consultation is not constitutionally necessary.[5] *See Flores–Ortega*, 528 U.S. at 479. For instance, Movant pled guilty and admitted to attempting to induce a minor to engage in sexual activity, he understood that the charge to which he was pleading guilty carried a mandatory minimum prison sentence of ten years and that he faced a potential maximum sentence of life in prison[6] (D.I. 60 at § 2), and he was ultimately sentenced to the mandatory

---

[5] The *Flores-Ortega* Court held that an attorney's failure to consult with the defendant about an appeal is actually reasonable when

> counsel advises defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing; and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal.

*Flores-Ortega*, 528 U.S. at 479.

[6] In fact, the record indicates that Movant pled guilty to Count Four in part because, if he had proceeded to trial, he would have faced a possible fifteen-year mandatory minimum sentence if convicted of the attempting to obtain child pornography charges (Counts One and Two). (D.I. 72

12

minimum ten-year sentence. In other words, when Movant entered his guilty plea, both he and counsel knew his best possible sentencing outcome was ten years of imprisonment, which is exactly what he got. Judge Sleet informed Movant of his right to appeal within fourteen days. (D.I. 72 at 44). Movant did not then express any interest in appealing. Finally, defense counsel concluded that there were no nonfrivolous grounds for appeal.[7] (D.I. 86 at 8) In sum, based on

---

at 19) As explained by defense counsel during sentencing, when "faced with [a] 15 versus a ten-year sentence, that was a no-brainer, we had to try to minimize this in any way we could." (*Id.*)

[7] The reasonableness of defense counsel's conclusion that there were no nonfrivolous issues to appeal is not negatively affected by the fact that defense counsel's conclusion was based, in part, on the existence of the appellate waiver in Movant's Plea Agreement. While "a defendant who has signed an appeal waiver does not, in directing counsel to file a notice of appeal, necessarily undertake a quixotic or frivolous quest," *Garza*, 139 S.Ct. at 745, the scope of the appellate waiver provides useful insight when determining whether "there is reason to think ... that a rational defendant would want to appeal." *Flores-Ortega*, 528 U.S. at 480. In other words, while Movant's appellate waiver does not preclude him from demonstrating that defense counsel had a duty to consult, the terms of the waiver, and the information defense counsel knew or should have known at the time about the likelihood of succeeding on any claims presented under it, must be considered when determining the existence of any potential duty to consult in this situation.

Here, during the fourteen-day appeal period following sentencing, defense counsel possessed the following information: (1) "[n]one of the conditions precedent to enabling [Movant] to file an appeal from his conviction and Sentence arose that would have enabled him to file an appeal and not be in violation of the Memorandum of Plea Agreement that he entered with the government" (D.I. 86 at 8); (2) there was no indication that Movant planned to challenge the appellate waiver; (3) Movant had received the mandatory minimum ten-year sentence, which was the lowest possible sentence he could have received in his particular situation; (4) Movant did not object to the Guidelines calculation presented in the Presentence Investigation Report (D.I. 67 at 21; D.I. 72 at 4); (5) the Government fulfilled its commitment to not oppose a two-level reduction in Movant's offense level for his affirmative acceptance of responsibility, and moved for the reduction of the offense level by one additional level, for a total reduction of three levels (*see* D.I. 60 at 2, ¶ 5; D.I. 72 at 6); (6) Movant benefitted by pleading guilty to attempted inducement of a minor to engage in sexual activity because the ten-year minimum sentence was less than the fifteen-year mandatory minimum sentence he would have

13

the totality of circumstances in Movant's case, defense counsel had no reason to think that a rational defendant would want to appeal.

Accordingly, the Court concludes that Claim One does not warrant relief.

### B. Claim Two: Defense Counsel Failed to Review Discovery, Lied, and Barely Met with Movant

In Claim Two, Movant contends that defense counsel "[r]efused to show [him] discovery and any evidence but told [him] to plead guilty," and that he went to defense counsel's office on two occasions "to see discovery, just for [counsel] to tell [Movant] he forgot his password." (*Id.*) Movant also asserts that defense counsel "[b]arely ever came to see [him]," and "lied about everything." (D.I. 77 at 5) For the following reasons, the Court concludes that none of these allegations warrant relief.

#### 1. Defense counsel's failure to review discovery

The discovery materials – which mostly consisted of a series of text messages between Movant and the detective/"father" discussing matters culminating in the meeting at Tidbury Park in Dover – were subject to a protective order. (D.I. 86 at 9) In his affidavit, defense counsel explains that, while "some discovery materials that had been provided by the Government with a protective passcode could not be opened because of issues regarding the passcode," he reviewed the substance of the series of emails with Movant, which constituted "the relevant discovery

---

faced if he had proceeded to trial on the child pornography charges in Counts One and Two (D.I. 86 at 6); and (7) Movant faced the risk of the Government voiding the Plea Agreement if he breached the appellate waiver, which would have resulted in Movant facing the fifteen-year mandatory minimum sentence for the child pornography charges of Counts One and Two (*id.*). Given this record, the Court concludes that a reasonable attorney in defense counsel's circumstances did not have a reason to conclude that a rational defendant in Movant's position would have wanted to appeal. Thus, defense counsel did not have an affirmative duty to consult with Movant.

materials needed to assess [Movant's] case." (*Id.*) Defense counsel further asserts that he "advised [Movant] during attorney/client meetings while he was on pretrial release and before he entered his plea that the government had overwhelming evidence establishing his guilt." (*Id.*)

Having reviewed both defense counsel's affidavit and Movant's assertions in his Motion in context with the record, the Court does not see a factual dispute. In reaching this conclusion, the Court notes that, for the most part, Movant and defense counsel provide consistent descriptions of the background information concerning the discovery issue. Movant went to counsel's office to review discovery. Some discovery materials were protected by a passcode. The passcode-protected discovery was not reviewable due to a problem with the passcode. In particular, Movant states that the supporting facts are, "I went to his office twice to see discovery, just for him to tell me he forgot the password." (D.I. 77 at 5) Movant does not state any facts that would indicate a refusal to review discovery. Movant characterizes this as a refusal to review discovery, but that overstates the asserted facts. Given these circumstances, the Court cannot conclude that the manner in which defense counsel reviewed discovery with Movant constituted deficient performance under the first prong of the *Strickland* standard.

Even if the Court were to accept Movant's gloss on the facts, that is, defense counsel refused to review the passcode-protected discovery, he cannot establish prejudice under *Strickland*. Movant does not explain how reviewing the discovery for which defense counsel lacked a passcode would have resulted in him proceeding to trial in lieu of pleading guilty.[8] The Government asserts that Movant was independently aware of the discovery items because they consisted entirely of his Movant's own statements and actions. (D.I. 92 at 15) Moreover, the record provides independent confirmation that Movant was aware of the evidence against him

---

[8] Indeed, nowhere does Movant suggest in the least that he ever wanted or now wants a trial. What he wants is a sentence under the ten-year minimum mandatory. (D.I. 94)

15

and was provided with the discovery leading to the charges against him. For instance, the Government described its case against Movant and provided evidence demonstrating Movant's guilt when it responded to Movant's Motion to Dismiss the Indictment. (*See* D.I. 43) Second, the sentencing transcript[9] demonstrates that evidence of Movant's wrongdoing was provided to him prior to the guilty plea. (*See* D.I. 72 at 10, 13, 18) And finally, during his sentencing hearing, Movant stated that "he pled guilty and accept[s] full responsibility for [his] actions." (*Id.* at 31) Viewing these circumstances together demonstrates that Movant cannot establish a reasonable probability that he would not have pled guilty but for defense counsel's failure to provide a portion of the discovery.

Accordingly, the Court will deny Movant's instant allegation of ineffective assistance as meritless.

### 2. Defense counsel lied about everything and barely met with Movant

Next, Movant contends that defense counsel "lied about everything" and "barely ever met with him." (D.I. at 5) Movant's overly broad and unsupported assertion that defense counsel lied about everything fails to overcome *Strickland*'s strong presumption that defense counsel's "representation [was] within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

The Court further finds that defense counsel's affidavit rebuts Movant's contention that defense counsel barely ever met with him. For instance, defense counsel asserts that he met with Movant at FDC Philadelphia after the entry of Movant's guilty plea. (D.I. 86 at 10) Defense

---

[9] Unfortunately, the record does not contain a transcript of the guilty plea colloquy. When "the record is silent as to what statements [the defendant], his lawyer, or the prosecutor might have made regarding promised sentencing concessions," statements made during sentencing hearing might "shed[] light upon the veracity of the allegations [Petitioner] later advanced." *Blackledge v. Allison*, 431 U.S. 63, 77 (1977).

16

counsel also describes meeting with Movant at his office while Movant was on pre-trial release, which Movant concedes when complaining about defense counsel's "refusal" to review discovery. (Id. at 9)

Given all these circumstances, the Court will deny the instant two allegations in Claim Two as meritless.

### IV.     EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Movant is not entitled to relief under § 2255. Therefore, the Court concludes an evidentiary hearing is not warranted.

### V.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion as time-barred and, alternatively, as meritless. The Court is persuaded that reasonable jurists would not find it debatable that the Motion is meritless. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

The Court concludes that Movant is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate Order will issue.